**SIGNED.**

Dated: May 06, 2011



_____
**JAMES M. MARLAR
Chief Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>DORA ZIMMERMAN,<br><br>                   Debtor.<br><br>KATHRYN MONDOTTE,<br><br>                   Plaintiff,<br>vs.<br><br>DORA ZIMMERMAN,<br><br>                   Defendant. | Chapter 7<br><br>No. 4:10-bk-11364-JMM<br><br>Adversary No. 4:10-ap-01479-JMM<br><br>**MEMORANDUM DECISION** |

A trial in this action came on for hearing on May 4, 2011. The complaint alleged that there existed a debt owed to Plaintiff which should be declared non-dischargeable (11 U.S.C. § 523), as well as allegations that the Defendant's discharge should be denied (11 U.S.C. § 727).

## JURISDICTION

This court has jurisdiction over this core matter. 28 U.S.C. §§ 157(b)(2)(I) and (J).

## **PROCEDURAL COURSE OF TRIAL**

At the conclusion of Plaintiff's case, the Defendant moved for involuntary dismissal (directed verdict) of the § 727 counts of the complaint. The court granted the oral motion. FED. R. BANKR. P. 7041.

The case then proceeded to conclusion on the §§ 523(a)(2) and (4) counts, and after Plaintiff rested, the defense presented its case. Evidence, both documentary and oral, was presented. The court then took the matter under advisement.

## **FACTS**

On May 5, 2003, the Plaintiff, Kathy Mondotte (nee James) (hereinafter "James") and the Defendant, Dora C. Varela de Zimmerman (hereinafter "Zimmerman") entered into an agreement in which James agreed to purchase a house in San Carlos, Mexico from Zimmerman (Ex. A). The "Private Contract and Promise of A Bank Trust Title" refers to the residence by both a legal description in metes and bounds and by a lot number, 512 (Ex. A).

The purchase price was $197,500 (U.S.). It was to be paid in the following manner, without interest:

| | |
|---:|---|
| $10,000.00 | Earnest money |
| 50,000.00 | First instalment due September 30, 2003 |
| 45,833.33 | Second instalment due September 30, 2004 |
| 45,833.33 | Third instalment due September 30, 2005 |
| 45,833.33 | Final instalment due September 30, 2006 |
| $197,499.99[1] | |

---

[1] Presumably, the extra penny was forgiven. In any event, it is <u>de minimus</u> and not an issue in the case.

(Ex. A.) The contract was witnessed by Zimmerman's real estate broker and agent, an individual at Snowbird Realty (Ex. A).

By January 25, 2005, almost one and one-half years early, James paid off the contract (Ex. B). In fact, according to James' accounting, James overpaid by $5,745.09, paying Zimmerman a total of $203,245.09 (Ex. B). James has made no claim for the overpayment.

Because of Mexican law, which does not allow foreigners to own real property within many miles of its coastline, property sold to Americans is placed into some type of trust relationship with, typically, a Mexican bank. San Carlos, Mexico, is northwest of Guaymas, and is a seaport town on the Gulf of California.

In this case, the contract between the parties, who are both American citizens, provided that upon full payment, Zimmerman would convey her interest to a bank trust in favor of James and "promise[d] a bank trust title" to James (Ex. A, p. 1, para. II; First Clause).

All of the money paid by James was made either to Zimmerman or to her authorized agent in Mexico (Ex. B).

After closing, James took possession of the house, and moved her personal property into it. In addition, she made improvements to the property. These expenses, their values, and the cost of the improvements were itemized by James, and break down in the following manner:

| | |
|---|---|
| Personal property | $144,444 |
| Improvements and architectural fees | 55,000 |
| | $199,444 |

(Ex. E.) James made her final payment under the agreement (Ex. A) on January 25, 2005 (Ex. B).

In mid-May, 2005, James and Zimmerman met at a bank in Chandler, Arizona. James testified that the purpose of the meeting was for her to sign the final paperwork by which Zimmerman could then complete the transfer of the house to her. This meeting occurred on either May 12 or 13, 2005.

James was presented a document, prepared by Zimmerman, which James read and signed. James testified that the document (Ex. J) contained but a single paragraph of substance, which read:

> This agreement is to notify all concerned parties of the following property located at house lot number 512, located at caracol peninsula sector San Carlos Nuevo Guaymas Sonora Mexico, recorded at the recording office with number 46372 section first book 117 dated January 12 year 1994 under the owners name of Dora Cecilia Varela De Zimmerman.

James signed the document, it was then notarized at the bank, and the parties separated.

Sometime in July, 2005, James received a telephone call from a neighbor in San Carlos advising her that someone was removing her possessions from the San Carlos home.

It was shortly thereafter that James learned by Zimmerman had dispossessed her, converted her personal property, moved into the home herself, and promptly sold it to other Americans named Fail. James could not understand how this could have happened, and retained Mexican attorneys to assist her. It then turned out that the letter which James signed on May 12 or 13 contained the following <u>additional</u> language by which James purportedly gave up her entire interest in the real and personal property to Zimmerman:

> The above property agreement is to inform all parties that Mrs. Kathy James is willingly agreeing to return the above property to the original owner Mrs. Dora Cecilia Varela De Zimmerman, since Mrs. Kathy James did not comply with all the requirements of the sales contract signed on the year 2003.
>
> By signing here under I Mrs. Kathy James willingly return to Mrs. Dora Cecilia Varela De Zimmerman her property including all inside and outside furnishings.

(Ex. J.) James testified that she believed the additional language had been "cut and pasted" onto the original, then re-xeroxed to make it appear as if it was merely a copy of an original. Neither Zimmerman nor James produced the original, nor did James retain a copy of what she had signed.

James also produced an expert witness, a documents forensics expert from Mexico, Mr. Pablo de Garay. Mr. de Garay has extensive experience in his field (Ex. H). Mr. de Garay testified that upon his inspection of the letter signed by James, he felt it was altered from the original

by the addition of the second and third paragraphs. Mr. de Garay's opinion was that the original, signed by James--and which had about four inches between the bottom of the first paragraph and the signature line--had been re-run through a printer in such a way that the second and third paragraphs would be imprinted as to make it appear as if it were a contemporaneously written document. Mr. de Garay prepared a written report of his findings (Ex. K).

Against this evidence, Zimmerman maintained that James had not paid under the sale agreement (Ex. A). However, Zimmerman failed to produce any accountings or evidence to rebut James' summary of all payments which she had made either to Zimmerman, or to Zimmerman's designated agent. Zimmerman's agent, Catalina Ordaz of Snowbird Realty, has Zimmerman's power of attorney to collect payments for her. Zimmerman's testimony as to alleged defaults, by James, were either incomplete, incomprehensible, evasive, unresponsive to the issue, and/or disorganized.

Nor did Zimmerman offer any explanation for why James would voluntarily agree to give away a house for which she had paid $203,245.09, as well as give up her personal property and improvements worth another $199,444.

The court finds and concludes that Zimmerman's testimony was not credible, and that she caused or had caused an alteration, of some type, to be made to Ex. J, which altered or added language which purported to give all of James' Mexico property to Zimmerman. The court further finds that Zimmerman's conduct was fraudulent, obtained under false pretenses for the purpose of tricking and misleading James (i.e., by explaining that by signing the document James was assisting the process of James' gaining undisputed title to the Mexico property, and that by signing the document (Ex. J), this would aid in having James' name put on the approximate Mexican trust instruments), while at all time plotting to deceive James into relinquishing ownership and/or James' interest in the real and personal property.

It is also of legal interest that, although Zimmerman maintained that James was somehow in default, that Zimmerman <u>never</u> made any type of legal demand upon James. Had she done so, James could have responded, produced a record of her payments to Zimmerman or Zimmerman's authorized agent, and the matter could have moved smoothly through a dispute resolution process if James' answers were unsatisfactory to Zimmerman. James therefore had no

5

1 reason to suspect that Zimmerman's statements were anything but in conformity with what she knew to be the truth.

## THE LAW

### 1. Section 523(a)(2)--Money or Property Obtained by False Pretenses, Fraud or Misrepresentation

Plaintiff contends that Defendant defrauded her and obtained her money and/or property by misrepresentation, false pretenses or actual fraud. 11 U.S.C. § 523(a)(2).

Section 523(a)(2)(A) provides that:

> (a) A discharge ... does not discharge an individual debtor from any debt-
>
> * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In the Ninth Circuit, in order to establish that a debt is non-dischargeable under § 523(a)(2)(A), a creditor must establish five elements:

    A. misrepresentation, fraudulent omission or deceptive conduct by the debtor;

    B. knowledge of the falsity or deceptiveness of his statement or conduct;

    C. an intent to deceive;

    D. justifiable reliance by the creditor on the debtor's statement or conduct; and

    E. damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000). These elements must be proven by a preponderance of the evidence. In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010); Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654 (1991).

Whether the debt arises from fraud is the only consideration material to non-dischargeability. Consequently, whether or not the debtor received a benefit from the fraud is not a required element of proof. Muegler v. Bening, 413 F.3d 980, 983-84 (9th Cir. 2005) (citing Cohen v. de la Cruz, 523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)).

Here, James proved by a preponderance of the evidence that Zimmerman defrauded her, and in the process unlawfully taking from her the real estate in San Carlos (which Zimmerman subsequently sold to the Fails), and disposed of (or also sold) James' personal property and improvements. Zimmerman benefitted financially from this improper conduct.

**2. Section 523(a)(4)--Fraud or Defalcation While Acting As a Fiduciary**

Plaintiff asks for her debt from Zimmerman to be declared non-dischargeable under a theory of fraud or defalcation while acting as a fiduciary. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To prevail, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed fraud or defalcation in the course of that fiduciary relationship. In re Niles, 106 F.3d 1456, 1464 (9th Cir. 1997).

A "defalcation" is the "misappropriation of trust funds or money held in any fiduciary capacity, or the failure to properly account for such funds; it includes innocent defaults. In re Lewis, 97 F.3d 1182, 1186 (9th Cir. 1996).

"Embezzlement" is defined for purposes of § 523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Matter of Miller, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted). Thus, embezzlement requires "proof of the debtor's fraudulent intent in taking the property." Id.;

7

see also In re Brown, 237 B.R. 740, 748 (Bankr. C.D. Cal. 1999). In order to prove fraud under § 523(a)(4), the plaintiffs must prove "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." In re Fox, 370 B.R. 104, 116 (6th Cir. BAP 2007) (citation omitted). Fraudulent intent may be shown by circumstantial evidence. Id.

The meaning of "fiduciary" in bankruptcy is a matter of federal law. In re Hemmeter, 242 F.3d 1186, 1189 (9th Cir. 2001). "Fiduciary" in the bankruptcy discharge context includes express trusts, but excludes trusts *ex maleficio*, i.e., trusts that arose by operation of law upon a wrongful act. Id. (citing Davis, supra). In other words, debtor must have been a "trustee" before the wrongdoing and without reference to it. Lewis, 97 F.3d at 1185; Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). While the definition includes statutory trusts which meet certain requirements, it does not include constructive, resulting and implied trusts. Id., 242 F.3d at 1189-90 *(*citing In re Padrazzini, 644 F.2d 756, 758-59 (9th Cir. 1981)).

The kind of trust or fiduciary setting which is actionable under § 523(a)(4) is "that in which someone-a lawyer for example, or a guardian, or a managing partner-in whom confidence is reposed is *entrusted with another person's money for safekeeping*." Matter of Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994) (emphasis supplied).

State law is to be consulted to determine when a trust giving rise to the fiduciary relationship exists. Haller, 780 F.2d at 796.

In the instant case, there was no evidence that the parties had any kind of fiduciary relationship. Their contract was a simple one wherein one party was selling land and personalty, and the other was buying it on an instalment basis.

Because James failed to prove the existence of any kind of fiduciary relationship, this cause of action fails. Judgment will be rendered in Zimmerman's favor on this count, and the claim on § 523(a)(4) grounds will be dismissed.

8

# APPLICATION OF THE LAW TO THE FACTS

Pursuant to Ninth Circuit law construing § 523(a)(2), this court finds that the facts supporting each element are:

### A. Misrepresentation, fraudulent omission or deceptive conduct by the debtor

Zimmerman presented a paper (Ex. J) to James to sign, on the representation that such document was necessary to conclude the sale of the property to James, and that its execution would aid in the Mexican paperwork necessary to transfer the appropriate ownership in the San Carlos, Mexico property to James.

The document presented did not include the second and third paragraphs of Ex. J.

### B. Knowledge of the falsity or deceptiveness of his statement or conduct

After James executed the document (Ex. J), Zimmerman altered the original by either re-running the original through a printer whereupon new paragraphs (the second and third) were added, or alternatively by cutting and pasting the same second and third paragraphs onto the original, and then re-xeroxing it. Because the notarization was on an attached page, either course of action could have been accomplished with relative ease.

At all relevant times, Zimmerman intended to deceive James, because there is no evidence that James either agreed to relinquish over $400,000 in property to Zimmerman, or that James had any motivation or reason to do so.

### C. <u>An intent to deceive</u>

Because all of Zimmerman's actions were intentional, and designed to specifically harm and injure James, it may be (and is) the conclusion of the court that Zimmerman intended to deceive James.

### D. <u>Justifiable reliance by the creditor on the debtor's statement or conduct</u>

At all relevant times, James justifiably and reasonably relied on Zimmerman, to whom she had paid $203,245.09, to comply with her promise to transfer the trust title to her, as the original contract specified (Ex. A). James had no reason to suspect Zimmerman of any wrongdoing, because Zimmerman had never previously made any contention that James was in violation of the sales contract in any fashion.

### E. <u>Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct</u>

Because of Zimmerman's tortious and intentional conduct, James had her house wrongfully taken away and sold out from under her (with Zimmerman again being the seller), and at the same time had Zimmerman intentionally take, convert or steal from her the personal property located on the premises, as well as all improvements made thereto by James.

James has suffered damages in the following sums:

| | | |
|---:|---|---|
| $203,249.09 | Monies paid to purchase home | (Ex. B) |
| 199,444.00 | Value of personalty and improvements | (Ex. E) |
| <u>10,000.00</u> | Expenses for Mexico litigation | (Ex. B) |
| $412,689.09 | | |

This debt is therefore hereby liquidated, and declared to be non-dischargeable. 11 U.S.C. § 523(a)(2).

**DAMAGES**

Based on the findings of fact set forth above, the court concludes that the Debtor/Defendant, Dora Zimmerman, is liable to the Plaintiff, Kathy Mondotte (nee James), for fraudulently obtaining money or property from James in the following sums:

| | | |
|---|---|---|
| $203,245.09 | Monies paid for home and personalty | (Ex. B) |
| 199,444.00 | Value of personal property and improvements | (Ex. E) |
| 10,000.00 | Fees incurred in Mexican court | (Ex. B) |
| $412,699.09 | | |

James' complaint also seeks punitive damages. The U.S. Supreme Court recognizes that punitive damages may also be awarded in an appropriate non-dischargeability case. This case is deserving of such an award in the sum of $150,000. <u>Cohen v. de la Cruz</u>, 118 S.Ct. 1212 (1998).

Also, because the wrongful taking of James' property is partially capable of easy calculation, interest on the easily liquidated amount is appropriate. On May 13, 2005, James had paid Zimmerman $203,245.09 for the property. In Arizona, legal interest on a debt runs at 10% (simple) per annum. ARIZ. REV. STAT. § 44-1201(A). Interest on the entire judgment, when entered, will accrue interest at the federal rate of interest. Here that figure has been running for six years (as of May 13, 2011). That figure is $121,947.00 ($20,324.50 x 6 years). This interest figure also makes up part of the damages for Zimmerman's fraudulent conduct.

Therefore, a non-dischargeable judgment for fraud will be entered against Defendant Dora Zimmerman for:

```
     $412,699.09   Actual damages
      121,947.00   Interest through May 13, 2011
      150,000.00   Punitive damages
     $684,646.09
```

A separate judgment will be signed. Any aggrieved party has 14 days within which to appeal. FED. R. BANKR. P. 8002.

## **CONCLUSION**

Judgment will be entered simultaneously with the filing of this Memorandum Decision. A Bill of Costs, for Plaintiff's statutory taxable costs, shall be filed within 15 days. Unless objected to (and after decision made thereafter), such costs shall likewise constitute a part of the judgment.

DATED AND SIGNED ABOVE.

COPIES to be sent by the BNC ("Bankruptcy Noticing Center") to:

Attorney for Plaintiff
Attorney for Defendant
Trustee
Office of the U.S. Trustee